UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM HODGES,

                                    Plaintiff,

                                                              9:10-CV-0531
v.                                                            (GLS/GHL)

LESTER N. WRIGHT, JILL NORTHRUP,
DEAZEVEDO, NANCY SMITH,
J. COLLINS,

                                    Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

WILLIAM HODGES, 06-A-2600
Plaintiff *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN                   ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff William

Hodges is alleging that the Defendants violated his rights under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, and the Rehabilitation Act.  He is also alleging a violation of New York State Public Health Law § 2803-c (2002).  (Dkt. No. 19.)

Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 22.)  For the reasons that follow, I recommend that Defendants' motion be granted, and I also recommend that Plaintiff be given an opportunity to amend his amended complaint for all claims except the claim under New York Public Health Law.

I.    **BACKGROUND**

Plaintiff, a prisoner currently incarcerated at Great Meadow Correctional Facility, alleges that on August 16, 2008, his left knee was seriously injured when he slipped and fell on some paint while incarcerated at the Elmira Correctional Facility.  (Dkt. No. 19 ¶ 14.)  He requested Emergency Sick Call and was taken to the infirmary, where he was given ice and ibuprofen and was not seen by a doctor.  *Id.* ¶ 15.  On August 18, 2008, Plaintiff received an X-ray, was given crutches and a bandage, and was returned to his cell without being seen by a doctor.  *Id.* ¶ 16.  Thereafter, he made a request to see a doctor which was denied.  *Id.* ¶ 17.  He then filed a grievance on September 6, 2008, requesting again to see a doctor.  (Dkt. No. 19 at 14-18[1]).

Plaintiff was transferred to Upstate Correctional Facility on September 15, 2008.  *Id.* ¶ 19.  On October 4, 2008, while incarcerated at Upstate, Plaintiff was required to switch from a bottom bunk to a top bunk.  *Id.* ¶ 21.  As a result of this reassignment, he claims that, because of his knee injury, he was forced to sleep on the floor, causing him "severe pain and stress."  *Id.*

---

[1]Page numbers refer to the page numbers assigned by the ECF system.

Plaintiff then wrote to the Superintendent of the Facility requesting medical treatment and advising that he was sleeping on the floor.  *Id.*

Plaintiff was seen by Dr. DeAzevedo on October 20, 2008 and requested further tests, evaluation by a specialist, and a bottom bunk permit due to his inability to climb to the top bunk. *Id.* ¶ 22.   Dr. DeAzevedo denied his requests and diagnosed Plaintiff with arthritis.  *Id.* ¶ 23. Plaintiff claims that his injuries went unaddressed for his entire stay at Upstate.  *Id.* ¶ 24.

While at Upstate Correctional Facility, Plaintiff filed four grievances relating to his medical care.  (Dkt. No. 19 at 20-32).  Each grievance was appealed to the Superintendent, and the first three cases were reviewed and investigated by N. Smith.[2]  *Id.* at 22, 25, and 28.  Each of Ms. Smith's investigations included a review of Plaintiff's medical requests, medication recommendations, physician evaluations, assessment of his medical needs, and necessary next steps.  On each of these three occasions, Ms. Smith concluded that Plaintiff had received appropriate care.  *Id.*  Plaintiff then further appealed each grievance to the Central Office Review Committee, which upheld each of the Superintendent's decisions.  *Id.* at 23, 26, 29, and 32. During his time at the Upstate facility, Plaintiff wrote to the Superintendent twice and to the Nurse Administrator, later identified as Defendant Smith, five times regarding his care.  *Id.* at 34-46.  Defendant Smith responded three times.  *Id.*

On November 12, 2008, Plaintiff was transferred to Great Meadow Correctional Facility. *Id.* ¶ 25.  He made several requests to be seen by a doctor or specialist.  *Id.* ¶ 25.  Plaintiff filed a grievance on January 14, 2009, regarding his medical needs.  (Dkt. No. 19 at 48-50).  While at Great Meadow, Plaintiff sent two letters to the Nursing Administrator and received a response

---

[2]It is assumed that N. Smith is Defendant Nancy Smith.

back from Defendant Collins.  *Id.* at 52-55.

On February 26, 2009, Plaintiff was seen by Dr. Karandy who recommended therapy and referral to an orthopedic specialist.  *Id.* ¶ 27.  Plaintiff was then seen by Dr. Rubinovich, an orthopedic specialist, on April 9, 2009; he was diagnosed with a torn patellar tendon and underwent surgery on April 20, 2009, and on January 18, 2010.  *Id.* ¶ 29.

Plaintiff commenced this action on May 6, 2010, against J. Collins, Dr. DeAzevedo, Nancy Smith, Lester N. Wright, and John and Jane Doe in their individual and official capacities.  (Dkt. No. 1.)  The Complaint was later amended on August 3, 2010, to include Jill Northrup.  (Dkt. No. 19.)  Plaintiff is seeking declaratory, injunctive, and monetary relief.  Id ¶¶ 38-41.

Defendants now move to dismiss the amended complaint.  (Dkt. No. 22.)  Plaintiff has opposed the motion.  (Dkt. No. 24.)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

4

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). An opportunity to amend is not required where, as here, a plaintiff has already amended the complaint. *See Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint). In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

On June 16, 2010, Plaintiff filed a motion to amend his complaint to substitute Jill

Northrup for the "Jane/John Doe" Defendant.  (Dkt. No. 11.)  This motion was granted on August 3, 2010.  (Dkt. No. 18.)  This amendment was solely to name an additional Defendant and did not address the substance of the complaint.  Therefore, as is stated below, I recommend that Plaintiff be given another opportunity to amend in order to address the defects within his amended complaint, with the exception of his claim under New York State Public Health Law.

III.    ANALYSIS

A.    Eighth Amendment Medical Claim Against Defendant DeAzevedo

Defendants argue that the amended complaint fails to state a claim under § 1983 against Defendant DeAzevedo for a denial of adequate medical care and treatment.  (Dkt. No. 22-1 at 3-4[3]).

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care.  *Farmer*, 511 U.S. at 832; citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

---

[3]Page numbers in citations to Defendants' Memorandum of Law refer to the page numbers in the original document.

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702.

In his amended complaint, Plaintiff alleges months of severe pain and swelling to his knee after his slip and fall on August 18, 2008. (Dkt. No. 19.) He claims he was seen in the infirmary that day and two days later he was given an X-ray and crutches, yet he was not evaluated by a medical doctor on either occasion. *Id.* ¶¶ 15-16. He made several requests to be seen by a doctor over the next two months. *Id.* ¶ 17 and 14-18. During this time, he was transferred to Upstate Correctional Facility and in early October was required to switch from the

7

bottom bunk to the top bunk.  *Id.* ¶¶ 19, 21.   Due to his injury he was unable to climb up and down from the top bunk because of pain and, as a result, slept on the floor.  *Id.* ¶¶ 21-22. Plaintiff continued to file grievances regarding his treatment and eight months after the accident he was diagnosed with a torn patellar tendon, which required two surgeries.  *Id.* ¶ 29.  Based upon the foregoing, the Plaintiff has alleged sufficient facts to plausibly suggest that he suffered from a "serious medical condition."

However, the analysis does not end there.  Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996).  Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. at 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997).  An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id.*  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Id.; Smith v. Carpenter*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical

care will rise to the level of a constitutional violation.")  However, malpractice that amounts to culpable recklessness constitutes deliberate indifference.  Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan."  *Chance*, 143 F.3d at 703.

Defendants argue in their Memorandum of Law that Plaintiff's claims against Dr. DeAzevedo should be dismissed because the amended complaint fails to allege that Dr. DeAzevedo was deliberately indifferent to Plaintiff's serious medical needs.  (Dkt. No. 22-1 at 3-4).  A review of the amended complaint reveals a claim that "Defendants [sic] deliberate indifference to plaintiff's serious medical needs violated plaintiff's rights and constituted cruel and unusual punishment under the Eighth Amendment of the United States Constitution."  (Dkt. No. 19 ¶ 33.)  However, as stated above, *Iqbal* requires more than a recital of the elements of a cause of action.

Plaintiff alleges in his amended complaint that during his October 29, 2008, visit with Dr. DeAzevedo, Plaintiff requested tests, evaluation by a specialist, and a bottom bunk permit. (Dkt. No. 19 ¶ 22.)  He claims that Dr. DeAzevedo did not conduct any tests and returned him to his cell with a diagnosis of arthritis.  *Id.* ¶ 23.

There are no allegations in the amended complaint to indicate that Dr. DeAzevedo acted with the requisite culpable state of mind.  Disagreements over treatment decisions such as diagnostic techniques and the need for specialists does not rise to the level of a constitutional violation.  *Sonds v. St. Barnabas Hosp. Corr. Health Serv.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).  An allegation that the prisoner did not get the level of treatment he felt he deserved is also insufficient.  *Id.* at 311.  Plaintiff points out in his response that he was seen by another

doctor who, after an examination of the injury and a reading of his X-ray, diagnosed him with a

torn patellar tendon.  (Dkt. No. 19 ¶ 29.)   Assuming, *arguendo*, that Dr. DeAzevedo

misdiagnosed Plaintiff, such a misdiagnosis would amount to negligence or medical malpractice

and would not be a constitutional violation actionable under § 1983.

In light of the foregoing, I recommend that Plaintiff's § 1983 claim against Dr.

DeAzevedo be dismissed with leave to amend.

### B.      Personal Involvement

Defendants assert that the amended complaint fails to allege any facts regarding any

personal involvement of Defendants Northrup, Wright, Smith, and Collins, and thus the § 1983

claims should be dismissed as to those Defendants.  (Dkt. No. 22-1 at 2-3.)

Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some tangible connection between the unlawful conduct and the defendant.  *Bass v.

Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere

"linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the

doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347

F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d

Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held

a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory

personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]

### 1.    Defendant Lester Wright

With respect to Lester Wright, Defendants claim that because the amended complaint fails to allege any facts about his conduct, the claims against him should be dismissed. (Dkt. No. 22-1 at 2-3). Plaintiff identifies Dr. Wright as being responsible for the development and implementation of medical policies and practices for prisoners and also alleges that the Defendants (presumably including Dr. Wright) participated in a pattern and practice of refusing to "promptly provide adequate and imperative medical treatment." (Dkt. No. 19 ¶¶ 1, 8.)

As stated in *Iqbal*, a "'formulaic recitation of the elements'" is insufficient to state a claim. 129 S. Ct. at 1951; citing *Twombly*, 550 U.S. at 555. Plaintiff must do more than tender naked assertions devoid of further factual enhancement. *Iqbal*, *supra* at 1949 (citations and punctuation omitted). Other than identifying Dr. Wright in paragraph eight of the amended

---

[4]        In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

complaint, Plaintiff does not mention him at all.  Plaintiff offers no specific facts regarding his assertions of a "medical policy and practice" nor does he affirmatively link Dr. Wright to any of the events alleged in his amended complaint.  Plaintiff has not set forth any "factual content that allows the court to draw the inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*; *Twombly* at 556.  Plaintiff has not demonstrated the personal involvement necessary to state a § 1983 claim against Dr. Wright; therefore I recommend that this claim be dismissed, with leave to amend.

### 2.      Defendant Jill Northrup

With respect to Defendant Northrup, Defendants accurately state that there are no allegations in the amended complaint or in the attached documentation that even hint as to her possible involvement in Plaintiff's causes of action.  (Dkt. No. 22-1 at 2-3).  In Plaintiff's response to this motion, he identifies Ms. Northrup as the physician who ordered his X-ray on August 18, 2008, without examining him.  (Dkt. No. 24 at 3.)  For the reasons stated above, this is insufficient to state an Eighth Amendment claim, and I recommend that this claim be dismissed, with leave to amend.

### 3.      Defendant J. Collins

With respect to Defendant J. Collins, the documentation attached to the amended complaint identifies her as the Nurse Administrator at Great Meadow Correctional Facility. (Dkt. No. 19 at 55.)  Plaintiff's amended complaint states that he wrote several letters to the Nurse Administrator and the documentation attached to the amended complaint includes two letters and one response from Ms. Collins.  *Id.* ¶ 25 and 52-55.  The Second Circuit has held that letters to and from an official do not meet the requisite level of personal involvement necessary

to state a claim under § 1983.  *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).  As there is no indication of any further involvement by Ms. Collins beyond this correspondence, I recommend that the § 1983 claim against her be dismissed, with leave to amend.

### 4.   **Defendant Nancy Smith**

Turning finally to Defendant Nancy Smith, Plaintiff alleges in his amended complaint that he "filed several grievances and wrote several letters to the Superintendent and Nurse Administrator" during his incarceration at Upstate.  (Dkt. No. 19 ¶ 24.)  Plaintiff points out in his response to this motion that Ms. Smith also conducted the investigations into his grievances, and the documentation attached to his amended complaint confirms this.  (Dkt. No. 19 at 22, 25, and 28; Dkt. No. 24 at 2.)  However, this still does not meet the threshold of factual support the Supreme Court deemed necessary under *Iqbal* and *Twombly*.  Even assuming, *arguendo*, that it did, Ms. Smith's detailed investigations of Plaintiff's grievances would not meet the standard of "deliberate indifference" set out in Point A, above.  Therefore, I recommend that Plaintiff's § 1983 claims against Ms. Smith be dismissed, with leave to amend.

### C.   **Official Capacity Claims**

Defendants argue that Plaintiff's § 1983 claims against them in their official capacities are barred by the Eleventh Amendment.  (Dkt. No. 22-1 at 4-5.)  The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890);

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.[5]  All DOCCS employees are state officials for the purposes of the Eleventh Amendment.  *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 U.S. Dist. LEXIS 11531, at *7, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000)("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.").

With respect to Plaintiff's claims for money damages against the Defendants in their

---

[5]       *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under § 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . .  We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity.").

official capacities, I recommend those claims be dismissed, with leave to amend.  A plaintiff may still obtain prospective injunctive relief against a state official in his or her official capacity. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003).  However, due to the fact that I am recommending dismissal as to all Defendants, the claim for injunctive relief does not survive this motion.  If Plaintiff is granted leave to amend, he may attempt to state a meritorious claim for injunctive relief against the Defendants in their official capacities.

### D.      ADA and Rehabilitation Act Claims

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq*. ("ADA") applies to inmates in state prison.  *See United States v. Georgia*, 546 U.S. 151, 153-60 (2006) (reversing decision that paraplegic prisoner had not stated claim under Title II of the ADA).  In order to state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege facts plausibly suggesting the existence of three elements: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (3) such exclusion, denial or discrimination was by reason of his disability.  *Goonewardena v. New York*, 475 F. Supp. 2d 310, 324 (S.D.N.Y. 2007).  Claims under Title II and the Rehabilitation Act of 1973, 29 U.S.C. § 794, are treated identically. *Henrietta D.,* 331 F.3d at 272.

The ADA does not provide for individual liability.  *Herzog v. McLane Northeast, Inc.*, 999 F. Supp. 274, 276 (N.D.N.Y. 1998).  A prisoner may sue a public agency or an officer in his official capacity for violating the ADA, but only if the conduct complained of also violates the Eighth Amendment.  *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 411-13 (S.D.N.Y. 2006).  As

15

discussed above, Plaintiff cannot maintain an action for money damages against the Defendants

in their official capacities, and there is no public agency named as a Defendant.  Therefore, I

recommend that Plaintiff's claims under the ADA and the Rehabilitation Act be dismissed in

their entirety, with leave to amend.

>        **E.        Claim under New York Public Health Law § 2803**

Plaintiff in his amended complaint asserts a claim under New York State Public Health

Law ("NYSPHL") § 2803-c.  (Dkt. No. 19 ¶ 32.)  Defendants have not submitted any arguments

in favor of dismissal of this claim.

NYSPHL § 2803-c enumerates the rights of patients in certain medical facilities,

including the right to receive adequate and appropriate medical care.  N.Y. Pub. Health Law §

2803-c(3)(e) (2002).  Section 2803-c does not include a private right of action for violation of its

guidelines.  However, NYSPHL § 2801-d does allow for a private action by patients against a

residential health facility for violations of any right or benefit created or established by contract,

state statute or code, which would encompass the benefits set out in § 2803-c.  Nevertheless, §

2803-c "expressly applies only to nursing homes and facilities providing health-related service

which are under the jurisdiction of the Commissioner of Health."  *Randone v. State*, 910

N.Y.S.2d 355, 357 (N.Y. Ct. Cl. 2010)(citing N.Y. Pub. Health Law § 2803-c(2)).  The three

locations where Plaintiff was incarcerated, Elmira, Upstate, and Great Meadow Correctional

Facilities, are all under the jurisdiction of the Department of Corrections.  *See* N.Y. Correct. Law,

Articles 2-4 (2003).  Additionally, § 2801-d authorizes an action against a "facility."  Statutory

language is generally construed to its plain meaning.  *Greenery Rehab. Grp., Inc. v. Hammon*,

150 F.3d 226, 231 (2d Cir. 1998).   The present action is solely against individual defendants and

not against any facility or institution.

For the above stated reasons, I recommend that the NYSPHL § 2803-c cause of action be dismissed *sua sponte*.  Although I am recommending that Plaintiff be permitted to amend his amended complaint on all other claims, as stated above, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco*, 222 F.3d at 112 (citation omitted).  Such is the case here, where Plaintiff cannot sustain any cause of action against a prison for alleged violations of NYSPHL § 2803-c.

### F.    Retaliation Claim

Although not clearly set out in the "Legal Claims" section of the amended complaint, in paragraph eighteen Plaintiff alleges that he was transferred to another facility in retaliation for filing his grievance at Elmira Correctional Facility.  (Dkt. No. 19.)  Defendants have not raised an argument regarding dismissal of this claim.

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of

17

> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  This is so because virtually any
> adverse action taken against a prisoner by a prison official--even those
> otherwise not rising to the level of a constitutional violation--can be
> characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the

preponderance of the evidence that: (1) the speech or conduct at issue was "protected;" (2) the

defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights; and (3)

there was a causal connection between the protected speech and the adverse action--in other

words, that the protected conduct was a "substantial or motivating factor" in the defendants'

decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489,

492 (2d. Cir. 2001)).

Plaintiff alleges in his amended complaint that he filed grievances against prison officials.

(Dkt. No. 19 ¶ 18.)  The filing of a grievance against prison officials is constitutionally protected

conduct.  *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003);  *Graham v. Henderson,* 89 F.3d

75, 80 (2d Cir. 1996).  "Prisoners ... have a constitutional right of access to the courts and to

petition the government for the redress of grievances."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d

Cir. 1995).

However, the amended complaint does not show an adverse action.  In most cases, the

transfer of a prisoner is not considered an "adverse action."  *See Coleman v. Sutton,* 530 F. Supp.

2d 451, 453 (W.D.N.Y. 2008) (prisoner failed to state a retaliation claim where he did not allege that conditions into which he was transferred were more onerous than his original placement). *Compare Shine v. Hofman*, 548 F. Supp. 2d 112 (D. Vt. 2008) (transfer from general population to "close custody").   Plaintiff's bare assertion in the amended complaint that "in retaliation to [his] grievance he was added to the draft list," without more, is insufficient to state a claim for retaliation.   Therefore, to the extent that Plaintiff intended to assert a claim for retaliation, I recommend that it be dismissed, with leave to amend.

  **ACCORDINGLY**, it is

  **RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 22) be **GRANTED**; and it is further

  **RECOMMENDED** that the Court dismiss the retaliation and New York State Public Health Law claims *sua sponte*; and it is further

  **RECOMMENDED** that Plaintiff be granted leave to amend his amended complaint, with the exception of the claim under NYSPHL § 2803-c; and it is further

  **ORDERED** that the Clerk provide Plaintiff with a copy of *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 U.S. Dist. LEXIS 11531, 2000 WL 1154311, (S.D.N.Y. Aug. 14, 2000).

  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.   Such objections shall be filed with the Clerk of the Court.   **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.   *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated:  September 29, 2011
        Syracuse, New York

George H. Lowe
United States Magistrate Judge