**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM HODGES,**

                  **Plaintiff,**                **9:10-cv-531
                                                         (GLS/TWD)**

        v.

**LESTER N. WRIGHT et al.,**

                  **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
William Hodges
Pro Se
06-A-2600
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN      ADRIENNE J. KERWIN
New York State Attorney General       Assistant Attorney General
Albany Office
The Capitol
Albany, NY 12224

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* William Hodges brings this action under

42 U.S.C. § 1983, alleging his constitutional rights were violated by defendants.[1] (*See* 2d Am. Compl., Dkt. No. 37.) Pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Dkt. No. 40.) For the reasons that follow, the defendants' motion is granted in part and denied in part.

## II. Background[2]

On August 16, 2008, Hodges' left knee was seriously injured when he slipped and fell on some paint at Elmira Correctional Facility. (*See* 2d Am. Compl. ¶ 10.) After being taken to the infirmary, Hodges was given ice and a few ibuprofen, and returned to his cell without seeing a doctor. (*See id.* ¶ 11.) Two days later, an X-ray of his knee was taken, he was given crutches and a bandage, and was returned to his cell, again without being seen by a doctor. (*See id.* ¶ 12.)

The X-ray impressions were forwarded to defendant Jill Northrop, a nurse practitioner, for evaluation; Hodges' "numerous requests to see a doctor" were denied and he was also denied medication for his "pain and

---

[1] Dr. Lester N. Wright, Dr. Mario DeAzevedo, and Jill Northrop.

[2] The facts are drawn from Hodges' Second Amended Complaint and presented in a light most favorable to him. (*See* 2d Am. Compl.)

suffering." (*Id.* ¶ 7, 13.) Hodges' injuries were "so severe" that he could not attend normal activities, including showers. (*Id.* ¶ 14.) He was only provided with enough medication for one day, and his crutches were confiscated. (*See id.*) On September 6, 2008, Hodges filed a grievance "to resolve the problem." (*Id.* ¶ 15.)

Hodges was transferred to Upstate Correctional Facility ("Upstate") on September 15, 2008. (*See id.* ¶ 16.) While incarcerated at Upstate, he complained of his injuries and severe pain, and made multiple requests to see a doctor through the sick call procedure, by filing grievances, and writing complaints. (*See id.* ¶ 16-17.) On or about October 5, 2008, Hodges was required to switch from a bottom bunk to a top bunk. (*See id.* ¶ 18.) As a result of this reassignment, Hodges claims that he was forced to sleep on the floor because his knee injury prevented him from climbing to the top bunk. (*See id.*) He then wrote to the Superintendent of Upstate, requesting medical treatment and complaining that he was sleeping on the floor. (*See id.*)

On October 20, 2008, Hodges was seen by defendant Dr. Mario DeAzevedo, and requested further tests, an evaluation by a specialist, a cane, a bottom bunk, and an operation if necessary. (*See id.* ¶ 8, 19.) Dr.

3

DeAzevedo denied these requests and diagnosed Hodges with arthritis. (*See id.* ¶ 20.)

Following his transfer to Great Meadow in February 2009, Hodges was seen by Dr. Karandy, who determined that he required physical therapy. (*See id.* ¶ 23.) After consulting with the therapist, Hodges was told that therapy would be of "no help," and that his medical condition was "so serious and had deteriorated to such a degree, that it was likely [he] would need surgery to repair it." (*Id.* ¶ 24.) The therapist further recommended that Hodges consult with an orthopedic specialist. (*See id.*) Hodges was thereafter seen by an orthopedic specialist; he was diagnosed with a torn patellar tendon and underwent two reparative surgeries. (*See id.* ¶ 25.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.[3] For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

---

[3] Because Hodges is proceeding *pro se*, the court will construe his Second Amended Complaint liberally. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## IV. **Discussion**

Defendants contend that Hodges' causes of action should be dismissed for failure to state a claim under 42 U.S.C. § 1983. (*See* Dkt. No. 40.) Hodges avers that he has sufficiently pleaded facts tending to show that his constitutional rights were violated, and furthermore, that the court should not dismiss his Complaint. (*See generally* Dkt. No. 42.) The court agrees with the defendants in part.

To establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner "must show that . . . [he] had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (internal quotation marks and citation omitted). The first prong of this claim—referred to as medical need—is objective, and "measures the severity of the alleged deprivation." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The second prong—regarding deliberate indifference—is subjective, and "ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 184. Assuming, without deciding, that Hodges' condition is objectively serious, he has not sufficiently pleaded facts satisfying the second prong of a claim for deliberate indifference to his serious medical

needs.

To establish deliberate indifference, an inmate must prove that a prison official: (1) knows of and disregards an excessive risk to inmate safety; (2) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" and (3) actually drew that inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *accord Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  In doing so, the inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  As such, an "inadvertent failure to provide adequate medical care" does not constitute deliberate indifference, nor does "a complaint that a physician has been negligent in diagnosing or treating a medical condition."  *Id.* at 105-06.  Thus, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Id.* at 106; *accord Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Here, Hodges alleges that Dr. DeAzevedo failed to "properly

6

diagnose his injury" and treat his symptoms, which "evinces a clear demonstration of [Dr. DeAzevedo's] deliberate indifference." (2d Am. Compl. ¶ at 31-32.) However, there are no allegations in Hodges' Second Amended complaint to indicate that Dr. DeAzevedo "acted with a sufficiently culpable state of mind." *Smith*, 316 F. 3d at 184. Moreover, "the question of whether an X-ray or additional diagnostic techniques or forms of treatment . . . is a classic example of a matter for medical judgment," and the decision not to pursue such measures does not represent cruel and unusual punishment. *Estelle*, 429 U.S. at 107. Thus, even if Dr. DeAzevedo misdiagnosed Hodges, a misdiagnosis would amount to negligence or medical malpractice, not a constitutional violation. It follows that Hodges' allegations against Dr. DeAzevedo are insufficient to state an Eighth Amendment claim, and are thus dismissed.

The claim against Dr. Wright should be dismissed for similar reasons. In his response to the defendants' motion, Hodges maintains that Dr. Wright "had personal knowledge of [his] [c]onstitutional deprivations," and failed to remediate them. (Dkt. No. 42 at 2.)
Presuming, without deciding, that Dr. Wright was personally involved, Hodges' grievances were investigated by nurses who found that Hodges

7

had received appropriate care, and his knee was merely arthritic. (*See* 2d Am. Compl. at 24, 27, 30, 33.) As such, Hodges claim against Dr. Wright is untenable as there is no evidence that Dr. Wright possessed a "sufficiently culpable state of mind." *Smith*, 316 F.3d at 184.

On the contrary, Hodges implies that Northrop misdiagnosed his injury, and failed to issue him "medication to constitute *any* form of treatment for the pain and suffering he was experiencing." (2d Am. Compl. ¶ 13). Additionally, in Hodges' response to defendants' motion, he maintains that Northrop's review of the X-rays revealed "degenerative changes from his injury," but Northrop failed to "see, examine, or provide [him] with any type or form of medication for the severe pain he was experiencing." (Dkt. No. 42 at 4-5.) At this juncture, Hodges' obligation is only to plead "factual content that allows the court to draw the reasonable inference that [Northrop] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court is cognizant that Hodges' claim is not flawless,[4] it is nonetheless unpersuaded by defendants'

---

[4] The fact that a prisoner might prefer an alternative treatment, or an allegation that he did not receive the level of treatment he felt he deserved, does not constitute deliberate indifference. *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).

arguments with respect to Northrop.

Because Hodges' claim against Northrop is facially plausible, *see Iqbal*, 556 U.S. at 678, defendants' motion to dismiss in this regard is denied.

### V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 40) is **GRANTED** in part as to all claims against Drs. Wright and DeAzevedo; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 40) is **DENIED** in part with respect to Hodges' Eighth Amendment claim against Northrop; and it is further

**ORDERED** that Drs. Wright and DeAzevedo are terminated as parties; and it is further

**ORDERED** that Northrop file the appropriate responsive pleadings within the time allotted by the rules; and it is further

**ORDERED** that the parties notify Magistrate Judge Therese Wiley Dancks in order to schedule further proceedings in accordance with this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 2, 2012
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court